Erin Ronstadt, SBN 028362
Kyle Shelton, SBN 027379
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
kyle@ronstadtlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lorena Howard,<br>Plaintiff,<br>v.<br>The Lincoln National Life Insurance Company, a plan fiduciary; and Wells Fargo & Co. Long-Term Disability Plan, an ERISA benefits plan,<br>Defendants. | Case No.<br><br>**COMPLAINT** |

For her claims against The Lincoln National Life Insurance Company ("Lincoln"), an ERISA plan fiduciary, and Wells Fargo & Company Long-Term Disability Plan (the "Plan") (collectively "Defendants"), Plaintiff Lorena Howard ("Ms. Howard" or "Plaintiff") alleges as follows:

1. This is an action for wrongful termination of long-term disability ("LTD") benefits and other harm arising out of the wrongful termination of those benefits.

2. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

3. The Plan is an ERISA benefit plan established and maintained by Wells Fargo & Company ("Wells Fargo") for the benefit of its employees.

4. Ms. Howard was a participant and beneficiary of the Plan as an employee of Wells Fargo.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

5. At the time Ms. Howard sought LTD benefits under the Plan, Lincoln administered claims for Wells Fargo under the Plan, acted on behalf of the Plan, and acted as an agent of Wells Fargo and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

6. Lincoln is a plan fiduciary.

7. Lincoln also insures LTD benefits under the Plan.

8. Lincoln is the entity that both pays LTD benefits and decides eligibility for them, creating a structural conflict of interest.

9. Wells Fargo is the Plan Sponsor, Plan Administrator, a plan fiduciary, and Ms. Howard's former employer.

10. Lincoln has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

11. Ms. Howard is a United States citizen. She currently resides in Pinal County, Arizona and has been a resident of Pinal County at all times since becoming a Plan participant.

12. Lincoln is domiciled in the State of Pennsylvania.

13. Lincoln is licensed and authorized to do business in Pinal County, Arizona, and resides and is found within Pinal County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

14. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

15. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

**GENERAL ALLEGATIONS**

16. Ms. Howard suffers from several medical conditions, including cervical and lumbar degenerative disc disease, radiculopathy, fibromyalgia, status post-bilateral carpal tunnel releases, obstructive sleep apnea, and hyperthyroidism.

17. Her medical conditions cause a host of symptoms which severely diminish her ability and capacity to work.

18. Based on her collective medical conditions, Ms. Howard is Disabled and unable to perform the Material and Substantial Duties of her Own Occupation or Any Occupation for which she is qualified by training, education, and experience.

19. The Plan defines Disability for the first 24 months as the individual's inability, due to Injury or Sickness, "to perform the Material and Substantial Duties of his Own Occupation."

20. The Plan defines Own Occupation as the "occupation that he was performing when his Disability or Partial Disability began."

21. The Plan defined Material and Substantial Duties as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

22. After 24 months LTD benefits are payable under the Plan, the Plan definition of Disability changes to the inability "to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."

23. The Plan defines Any Occupation as "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

24. The Plan is governed by the laws of the State of Minnesota to the extent not preempted by federal law.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

25. By operation of Minn. Stat. §60A.42, the standard of review applicable to this court's decision concerning Plaintiff's entitlement to LTD benefits is *de novo*.

26. Ms. Howard started working as a Financial Crimes Specialist with Wells Fargo on April 30, 2012. Prior to working in this position, Ms. Howard had been an employee of Wells Fargo for approximately 14 years.

27. Ms. Howard's last day was September 26, 2019 due to her Disability.

28. In a letter dated May 1, 2020, Lincoln approved Ms. Howard's LTD claim.

29. On December 18, 2020, Ms. Howard's treating provider, Jonathan Helman FNP, completed a disability questionnaire indicating that due to an improvement in Ms. Howard's carpal tunnel syndrome, she could return to sedentary work.

30. On December 23, 2020, Lincoln notified Ms. Howard that they were terminating her LTD claim.

31. In response to Lincoln's termination of benefits, Ms. Howard attempted to return to Wells Fargo on a part-time basis.

32. Due to her worsening condition, Ms. Howard's last day of part-time work was February 18, 2021.

33. Lincoln approved Ms. Howard's LTD benefits through March 31, 2021.

34. On April 7, 2021, Ms. Howard's treating provider, Michael Wade MD, signed a Restrictions Form that stated Ms. Howard was "medically stable to return to work April 12, 2021."

35. This conclusion was the result of a misunderstanding on the part of Dr. Wade. He went on to clarify to Lincoln that it was not, in fact, his opinion that Ms. Howard could return to work.

36. Despite this clarification on the part of Dr. Wade, Lincoln again denied Ms. Howard's LTD benefits on April 13, 2021 (the "Denial").

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

37. In a letter dated October 8, 2021, Ms. Howard appealed the denial with the assistance of counsel.

38. During the initial appeal review, Lincoln received additional compelling evidence of Ms. Howard's Disability.

39. The additional medical evidence provided with the Appeal further substantiates Ms. Howard's Disability under the Plan. This includes further medical evidence, such as additional objective medical findings and a September 2, 2021 functional capacity evaluation ("FCE").

40. The FCE report concluded that "[Ms. Howard's] overall work tolerance is impaired" and that "Ms. Howard's self-reports of physical function correlated well with actual demonstrated function during clinical testing."

41. The functional evaluator's conclusions are based on several hours of objective testing.

42. Research shows that FCE findings are highly predictive of how an individual will perform in the world of work and, therefore, are relevant for predicting work function. Ms. Howard's FCE findings are reliable objective evidence of her lack of functional ability. Lincoln must give significant weight to these findings.

43. Lincoln knows that FCEs are the "gold standard" for determining a claimant's functionality, and yet, it and its peer reviewers consistently and willfully ignored the FCE.

44. On November 3, 2021, Lincoln referred Ms. Howard's claim for a medical review by Benjamin Hooker, MD.

45. Dr. Hooker reviewed medical evidence in Ms. Howard's claim, including Mr. Goldstein's FCE report.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

46. Dr. Hooker concluded that "the functional and medical evidence does support the claimant has reliable sustainable full time work capacity with the restrictions and limitations as outlined above."

47. This conclusion directly contradicts the opinions of Ms. Howard's treating providers, as well as the FCE.

48. Ms. Howard's counsel responded to adverse evidence generated by Lincoln in a letter dated December 24, 2021.

49. This letter contains the opinion of Ms. Howard's treating medical and pain management provider, Debra Pentz, D.C.

50. Dr. Pentz reviewed the September 19, 2021, FCE report, stating that she "AGREE[S] with the FCE restrictions and limitations that Lorena Howard is 'unable to sustain a competitive work pace due to severe pain and an inability to maintain any prolonged postures or positions'."

51. The December 24, 2021 letter also included information about a report completed by Mr. Goldstein on December 21, 2021 as an addendum to his initial FCE report.

52. In this addendum, Mr. Goldstein stated that, "[Ms. Howard's] functional limitations are well supported by objective diagnostics and her longstanding treatment history by numerous treating providers."

53. Additionally, Mr. Goldstein stated that, "The opinions provided by Dr. Hooker regarding Ms. Howard's residual capacity to perform work lack merit. Statements made by Dr. Hooker show that he has limited knowledge of the testing protocols used during functional capacity testing. Moreover, Dr. Hooker's formulated opinions about Ms. Howard's purported level of function without ever having evaluated her cannot be relied upon as being objective and reliable".

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

54. In a letter dated January 18, 2022, Lincoln denied Ms. Howard's appeal (the "Final Denial").

55. The Final Denial revealed that Lincoln had relied solely upon the opinions of a single physician, paid for his opinion by Lincoln, as opposed to the opinions of Ms. Howard's several treating providers and FCE evidence.

56. Lincoln disregarded the well-documented and work-preclusive opinions of Ms. Howard's treating providers.

57. Lincoln provided no rationale for preferring the opinion of one paid consultant over those of Ms. Howard's treating providers, nor why the FCE was not valid, objective evidence of Ms. Howard's disability.

58. Ms. Howard's counsel sent a request to reopen her LTD claim to Lincoln in a letter dated April 14, 2023.

59. This request included a copy of Ms. Howard's Social Security Disability ("SSDI") claim file, which was mailed to Lincoln as a separate USB flash drive.

60. On October 27, 2022, the Social Security Administration ("SSA") awarded Ms. Howard's SSDI benefits effective from her alleged onset date of disability, September 25, 2019.

61. The SSA found that Ms. Howard has "medically determinable impairment(s) significantly limit[ing] [her] ability to perform basic work activities."

62. The SSDI file contains relevant information in support of Ms. Howard's Disability, including information about the approval of her SSDI claim.

63. The April 14 request to reopen letter stated that the SSDI file was enclosed on a USB flash drive.

64. Lincoln denied Ms. Howard's request to reopen her claim in a letter dated April 17, 2023.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

65. However, as per the certified mailing receipt, Lincoln did not receive the USB flash drive containing the SSDI file until April 20, 2023.

66. Lincoln did not wait to receive the SSDI file before issuing a denial.

67. Despite knowing that Ms. Howard's SSDI file was forthcoming, Lincoln decided to deny the request to reopen without having evaluated all pertinent information.

68. Lincoln's pattern of suppressing or ignoring objective information supporting Ms. Howard's claim for benefits illustrates its bias in claims handling and its breach of fiduciary duty.

69. Ms. Howard cannot perform the material duties of her Own Occupation or any occupation and therefore comes within the definition of Disability under the Plan.

70. Ms. Howard exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendant Lincoln)**

71. All other paragraphs incorporated by reference.

72. The plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

73. The Plan represent LTD coverage and a promise to provide LTD benefits until Ms. Howard is no longer Disabled under the terms of the Plan.

74. Ms. Howard continues to be Disabled from her Own Occupation or any occupation under the terms of the Plan.

75. Ms. Howard has claimed the benefits under the Plan to which she is entitled.

76. Ms. Howard reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that she would receive benefits under the Plan until she reaches age 65 or until she was no longer Disabled.

77. Despite the coverage of Ms. Howard's Disability, Lincoln improperly terminated her LTD benefits in breach of the Plan and ERISA.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

78. Lincoln's conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

79. In light of Lincoln's wholesale and flagrant procedural violations of ERISA, Ms. Howard should be entitled to *de novo* review even absent the Minnesota statute. *See Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

80. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Howard is informed and believes that Lincoln makes claims decisions based on the claims resources and financial risk it faces on certain claims.

81. Lincoln wrongfully denied Ms. Howard's Disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. § § 1109, 1132.

82. Lincoln did not properly consider all the available evidence when terminating Ms. Howard's benefits.

83. Lincoln failed to conduct a full and fair review.

84. Lincoln misstated medical evidence for its own financial benefit, *e.g.*, it excessively relied on biased medical reviews provided by in-house medical consultants.

85. Lincoln relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Howard's benefits.

86. Lincoln abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Lincoln ignored the inaccuracies or created new reasons for denial.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

87. Upon information and belief, Lincoln provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

88. Lincoln routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

89. Lincoln failed to properly consider the opinions of Ms. Howard's treating and examining physicians.

90. In terminating Ms. Howard's LTD benefits, Lincoln completely disregarded evidence that Ms. Howard's conditions had not improved.

91. Upon information and belief, Lincoln used in-house reviewers in evaluating Ms. Howard's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Howard's benefits.

92. The peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

93. Lincoln's peer reviewing physicians did not set forth adequate substantive reasons why Ms. Howard's treating doctors' opinions were incorrect.

94. Lincoln failed to adequately explain why it credited the physician reviewers over Ms. Howard's treating physicians, who had personally examined her on a multitude of occasions.

95. Lincoln engaged in other procedural irregularities, which it did to serve its own financial best interests.

96. On information and belief, Lincoln engaged in claim discussions to decide the directions of appeals without having reviewed all the medical evidence, demonstrating its predetermined path of terminating benefits.

97. Lincoln intentionally gathered evidence to stack the deck in its favor and against Ms. Howard.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

98. Ms. Howard alleges upon information and belief that Lincoln has a parsimonious claims handling history.

99. Lincoln failed to conduct a "meaningful dialogue" regarding Ms. Howard's claim.

100. Under the *de novo* standard of review, to be entitled to benefits, Ms. Howard need only prove by a preponderance of the evidence that she is disabled.

101. Even under the abuse of discretion standard of review, Lincoln abused its discretion, because its decision terminating Ms. Howard's disability benefits was arbitrary and capricious and caused or influenced by Lincoln's, its reviewing physicians,' and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

102. Ms. Howard is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Lincoln's, its reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Howard's LTD claim.

103. Under the *de novo* standard of review, Ms. Howard is entitled to discovery regarding, among other things, the credibility of Lincoln's medical reviews and Lincoln's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

104. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Howard is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

105. Ms. Howard is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

106. Pursuant to 29 U.S.C. § 1132(g), Ms. Howard is entitled to recover her attorneys' fees and costs incurred herein.

107. Ms. Howard is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**WHEREFORE**, on all claims, Ms. Howard prays for entry of judgement against Defendant as set forth in this Complaint, which includes:

A. All past LTD benefits under the terms of the Plan;

B. Clarifying and determining Ms. Howard's rights to future benefits under the terms of the Plan;

C. For any other benefits Ms. Howard may be entitled to receive under the Plan due to her disability;

D. All other equitable relief that is proper as a result of Lincoln's breaches of fiduciary duties;

E. An award of Lincoln's attorneys' fees and costs incurred herein;

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Dated: September 8, 2023.

RONSTADT LAW, PLLC

By: _s/ Erin Ronstadt_
Erin Ronstadt
Kyle Shelton
*Counsel for Plaintiff*